IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| EVELINE ADAMS WARING, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:14-cv-4299-DCN |
| v. ) | |
| ) | |
| ROPER ST. FRANCIS PHYSICIAN ) | |
| NETWORK; DOUGLAS BOWLING; ) | **ORDER** |
| JOHN J. HALLETT, JR., M.D.; ) | |
| CAREALLIANCE HEALTH SERVICE, ) | |
| STEPHEN D. SHAPIRO, M.D., and ) | |
| MOHAMMAD DAUD NAWABI, M.D., ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on defendants Roper St. Francis Physicians Network ("the Network"), CareAlliance Health Service ("CareAlliance"), Douglas Bowling ("Bowling"), John J. Hallett, Jr., M.D. ("Hallett"), Mohammad Daud Nawabi, M.D. ("Nawabi"), and Steven D. Shapiro, M.D's ("Shapiro") (collectively "defendants") motion for attorney's fees. For the reasons set forth below, the court grants in part and denies in part defendants' motion, granting only for those fees defendants incurred seeking arbitration after the May 29, 2015 mediation in the amount of $8,108.50 and denying as to any fees that defendants incurred before the May 29, 2015 mediation. Pursuant to the arbitrator's decision, the court grants Waring fees for the wage payment claim for the period between July 14, 2014 and October 16, 2014 and orders that the parties bear their own costs for the arbitration proceedings.

1

# I. BACKGROUND

This case arises out of an employment dispute between plaintiff Eveline Adams Waring, M.D. ("Waring") and defendants. In November 2013, Waring and the Network entered into the most recent Employment Agreement ("Agreement"), which became effective November 9, 2013 and had a one-year term. Am. Compl. ¶ 18. The Agreement contained the following mediation and arbitration provision:

> 22.  **RESOLUTION MANDATED**.
>
> 22.1  **MEDIATION**. Network and Physician expressly agree that they shall seek mediation as their preferred method of handling problems, disputes or other matters in question that may arise between them from time to time. The mediation process may be initiated by either party by such party providing written notice to the other party at such time when the parties have been unable to reach a mutually agreed upon resolution to a problem or dispute within a reasonable period of time, and at such time as it appears that such a resolution is not likely to be attainable.
>
> 22.2  **ARBITRATION**. In the event that the parties are unable to reach a mutually agreed upon resolution through mediation, then upon the termination of the mediation process, the parties expressly agree to participate in arbitration proceedings and to be bound by the decision of the arbitrator. Such arbitration shall be conducted under the applicable guidelines and rules of the American Health Lawyers Association, shall take place in Charleston, South Carolina, and shall be concluded as promptly as possible. Each of the parties will use all reasonable efforts to ensure that any arbitration or mediation proceedings is completed within sixty (60) days following notice of a request for such arbitration or mediation. Network and Physician desire that this arbitration provision be interpreted in accordance with the South Carolina Arbitration Act, found at Section 15-48-1 of the South Carolina Code of Laws, as amended.
>
> 22.3  **EXPENSES; ATTORNEYS' FEES**. All expenses incurred for the services of a mediator shall be shared equally by the parties participating in the mediation process. All expenses incurred for the arbitration proceeding, including reasonable attorneys' fees, shall be paid by the party or parties so ordered in the decision of the arbitrator.

Defs.' Mot. for Summ. J. Ex. A. On May 23, 2014, as a result of ongoing disputes with the Network, Waring demanded mediation. Am. Compl. ¶ 64. The Network did not

respond to the demand.  Id.  On June 13, 2014, Waring terminated the agreement, ending her employment with the Network and again requesting mediation.  Id. ¶ 67.  On July 16, 2014, Hallett and Shapiro filed a claim with the South Carolina Department of Labor, Licensing, and Regulation ("LLR"), making allegedly false statements regarding Waring's conduct.  Id. ¶ 70.  On July 23, 2014, Waring again notified the Network that it had "failed to respond to the demand for mediation as required by the Agreement."  Pl.'s Resp. Ex. 1.

On or around September 2, 2014, the parties agreed to mediation on two days in October.  Waring's case was apparently going to be mediated by David McCormack along with a similar case filed by Dr. Karla Pou.  McCormack requested that Waring's counsel provide a complaint to defendants in order to formulate a defense.  On October 1, 2014, shortly before mediation was set to begin, Waring filed suit in the South Carolina Court of Common Pleas against the Network, Bowling, Hallett, and Nawabi.  In an email the same day, defendants' counsel indicated that she could not accept service and that she would "just have to move to enforce arbitration and [] seek costs against Dr. Waring. David just wanted a Complaint drawn up so we knew what was being mediated."  Pl.'s Resp. to Mot. to Dismiss, Ex. F.  By letter dated October 3, 2014, defendants' counsel canceled mediation, stating that "[a]lthough we could go forward with a mediation even with a court not yet ruling on a Motion to Dismiss or in the Alternative to Enforce Arbitration, it would be a pointless waste of money, much better spent on aggressively pursuing our own positions."  Defs.' Reply to Mot. to Dismiss, Ex. H.  On November 4, 2014, defendants removed the case to this court.  Defendants filed a motion to dismiss, or in the alternative, to compel arbitration that same day.  The court held a hearing on

3

December 18, 2014 on the motion to dismiss, or alternatively, to compel arbitration.  The court also granted leave for Waring to file an amended complaint.

On December 23, 2014, Waring filed an amended complaint, alleging eight causes of action:  (1) violation of the Fair Labor Standards Act ("FLSA"); (2) retaliation in violation of the FLSA; (3) breach of contract; (4) violation of the South Carolina Payment of Wages Act ("SCPWA"); (5) defamation; (6) violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"); (7) abuse of process; and (8) malicious prosecution.  The amended complaint added Shapiro and CareAlliance as defendants and added two causes of action for abuse of process and malicious prosecution.  On February 12, 2015, defendants filed a motion to dismiss Waring's defamation and SCUTPA claims.  Waring responded on March 2, 2015, and defendants filed a reply on March 12, 2015.  The court held a hearing on April 14, 2015.  The court instructed defendants that it was not necessary to refile their motion to dismiss at that time.  The court notified the parties by letter dated June 4, 2015 that it was inclined to compel arbitration.  ECF No. 64, Ex. 3.  The parties mediated the action on May 29, 2015 before mediator Jon Austen, in accordance with the court's scheduling order requiring the parties to do so.  ECF No. 43.

On June 29, 2015, Waring filed a letter with the court requesting a status conference and stating, in relevant part, that during discovery, "depositions were taken and there is testimony indicating that after [Waring's] employment ended[,] [d]efendants took actions that [Waring] contend[s] were not related to her employment, and, thus, not subject to arbitration."  ECF No. 54.  Defendants filed a motion for summary judgment

on June 30, 2015. Waring responded to the motion for summary judgment on July 17, 2015, and defendants replied on July 27, 2015.

In response to Waring's request, the court scheduled a status conference for August 12, 2015. The court allowed Waring to file supplemental briefing to address the issue. ECF No. 63. On August 20, 2015, the court requested that defendants file a supplemental motion to compel arbitration that addressed the arbitration agreement's application to the additional defendants and additional claims added in the amended complaint. ECF No. 64, Ex. 2. The court also instructed the parties to address the additional issues that arose after depositions, including those that Waring referenced in her letter to the court requesting a status conference. Id. On August 31, 2015, defendants filed a supplemental memorandum. ECF No. 64. Waring responded on September 9, 2015. ECF No. 64. On September 30, 2015, the court issued an order compelling arbitration, noting that Waring's supplemental briefing was "larg[ely] a recitation of the facts underlying each claim rather than a brief in support of their opposition to defendants' motion to compel arbitration." ECF No. 69 at 8.

Defendants filed the present motion for attorney's fees on October 14, 2015. Defendants request $24,849.50 for work associated with the successful motion to dismiss. In support of the reasonableness of the fees, defendants attach the affidavit of Katherine Helms, defendants' attorney, attesting to the time spent on the matter and the reasonableness of the fees. Defs.' Mot. Ex. A. Defendants also attach the billing records of the time spent on this matter from October 14, 2014 to September 30, 2015. Id. Waring filed a response in opposition to the motion on November 2, 2015. On November 24, 2015, Waring filed her Arbitration Complaint. Defs.' Supp. Mot. Ex. A.

Defendants filed an answer to Waring's complaint on January 29, 201. Defs.' Resp. 1. In her Arbitration Complaint, Waring abandoned her FLSA claims, the breach of contract claim, and her claim for violation of the South Carolina Unfair Trade Practices Act. Waring further abandoned all claims against Nawabi. Defendants filed a supplemental response in support of their motion on February 1, 2016.

The court stayed the attorneys' fees matter while the parties underwent arbitration for the underlying claims. The arbitrator issued a final decision on March 15, 2017. In the arbitration decision, the arbitrator awarded Waring attorneys' fees for the wage payment claim for the period between July 14, 2014 and October 16, 2014, ordering the Network to pay $4,000. The arbitrator also held that "[e]xcept as provided in this Order or in the Agreement, each party shall bear its own attorneys' fees and the costs of this proceeding." Defendants' motion for attorneys' fees in connection with their motion to compel arbitration is now ripe for the court's review.

## II.  STANDARD

### A.     Attorney's Fees

Traditionally, courts require each party to bear their own costs for litigation in accordance with the American Rule for costs and fees. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240 (1975). However, the general rule is subject to certain limited exceptions. United Food and Commercial Workers v. Marval Poultry Co., Inc. 876 F.2d 346 (4th Cir. 1989). For example, in Marval Poultry, the Fourth Circuit Court of Appeals held that a court may award attorney's fees and costs in an action pursuant to section 301 of the Labor Relations Management Act where a party's position in challenging an arbitrator's award was "without justification." Id. Other courts, including

courts within this circuit, have applied the "without justification" standard when a defendant refuses to submit to arbitration. See, e.g., Service Employees Intern. Union AFL–CIO v. Nonotuck Resource Assocs., Inc., 64 F.3d 735 (1st Cir. 1995); Food and Commercial Workers v. West Virginia–American Water Co., 2006 WL 2822262 (S.D.W. Va. Sept.29, 2006); Teamsters Local Union No. 505 v. Am. Ben. Corp., 2010 WL 1417808, at *2 (S.D.W. Va. Apr. 2, 2010).

    **B.**    **Review of an Arbitrator's Decision**

It is well settled that a court's review of an arbitration award "is among the narrowest known to the law." United States Postal Service v. Am. Postal Workers Union, AFL–CIO, 204 F.3d 523, 527 (4th Cir. 2000) (internal quotation marks omitted). "A court sits to 'determine only whether the arbitrator did his job-not whether he did it well, correctly, or reasonably, but simply whether he did it.'" Id. (quoting Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union, 76 F.3d 606, 608 (4th Cir. 1996)). "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." United Paper–Workers Int'l Union, AFL–CIO v. Misco, Inc., 484 U.S. 29, 38 (1987). The Fourth Circuit has emphasized the limited scope of judicial review because "[a] policy favoring arbitration would mean little, of course, if arbitration were merely the prologue to prolonged litigation . . . Opening up arbitral awards to myriad legal challenges would eventually reduce arbitral proceedings to the status of preliminary hearings." Remmey v. Paine–Webber, Inc., 32 F.3d 143, 146 (4th Cir. 1994). Therefore, "[a] confirmation proceeding under 9 U.S.C. § 9 is intended to be summary: confirmation can only be denied if an award has been corrected, vacated,

or modified in accordance with the Federal Arbitration Act." Taylor v. Nelson, 788 F.2d 220, 225 (4th Cir. 1986); see also Ottley v. Schwartzberg, 819 F.2d 373, 376 (2d Cir. 1987) ("Absent a statutory basis for modification or vacatur, the district court's task [is] to confirm the arbitrator's final award as mandated by section 9 of the Act.").

### III.  DISCUSSION

Defendants request that this court award their attorney's fees associated with having to enforce the arbitration clause of Waring's employment agreement. Defs.' Mot. 4–5. Defendants argue that Waring's opposition to arbitration, despite the unambiguous language of the Employment Agreement, was without justification, and that defendants are entitled to fees as the prevailing party. Id. at 5. Defendants argue that because Waring's "resistance to binding arbitration was wholly without merit and unsupported by applicable law, [d]efendants are entitled to their attorneys' fees associated with the successful motion to dismiss." Id. at 6. Defendants seek the total fees associated with defending this case before the arbitrator. Id. at 4. In response to defendants' request for attorney's fees, Waring argues that defendants are not entitled to an award of fees because they refused to mediate, which was a condition precedent to arbitration. Pl.'s Resp. 1. Waring also argues that her legal positions in opposing the motion to dismiss were reasonable because non-signatories to the Employment Agreement were parties to the litigation and she believed her tort claims relating to post-employment actions were not subject to arbitration.[1]  Pl.'s Resp. 5–6.

---

[1] Waring also argues that since the court ordered arbitration, it is up to the arbitrator to determine the appropriate award of attorney's fees. Pl.'s Resp. 7. Waring argues that "[a]ny award of fees now would be premature and usurp the authority of the

8

Defendants notified Waring that if she continued to pursue her claims, they would seek their attorney's fees and costs associated with compelling arbitration. ECF No. 9, Ex. 6. A review of Waring's complaint demonstrates that her arguments opposing arbitration were attenuated, and she framed her claims to avoid arbitration—by adding tort claims and non-signatories to the action after defendants already sought dismissal pursuant to the arbitration clause. Waring's Arbitration Complaint further supports defendants' argument that her claims were "without justification" because she abandoned three of her claims.

> The arbitration provision of the Employment Agreement states:
>
> All expenses incurred for the services of a mediator shall be shared equally by the parties participating in the mediation process. All expenses incurred for the <u>arbitration proceeding</u>, including reasonable attorneys' fees, shall be paid by the party or parties so ordered in the decision of the arbitrator.

Defs.' Mot. for Summ. J. Ex. A (emphasis added). Thus, the arbitration agreement between the parties does not explicitly provide for attorney's fees under these circumstances. However, defendants argue that the court has authority to grant its request pursuant to its equitable powers.

Courts within this circuit have granted a party's request for attorney's fees when the other party acted "without justification[,]" for example, by refusing "to submit all matters to arbitration and delay[ing] those proceedings." <u>American Ben. Corp.</u>, 2010 WL 1417808 ("Defendant's refusal to submit all matters to arbitration resulted in a delay of proceedings for over a year, greatly hindering the primary purpose of arbitration—'the quick resolution of disputes and the avoidance of the expense and delay associated with

---

arbitrator." <u>Id.</u> Since the arbitrator has now issued her final decision, the court does not address this portion of Waring's argument.

9

litigation.'"  (quoting Raymond James Fin. Servs., Inc. v. Bishop, 59 F.3d 183, 190 (4th Cir. 2010)).  The Fourth Circuit first employed the "without justification" standard to determine whether a court may award attorney's fees pursuant to its equitable powers when a party challenges an arbitrator's decision in a labor dispute under section 301 of the Labor Management Relations Act.  See generally Marval Poultry Co., Inc., 876 F.2d 346.  However, the Marval Poultry court did not hold that courts may award attorney's fees when a party is forced to pursue litigation to compel arbitration despite the clear language of an arbitration agreement.  Although defendants cite a few courts within this circuit that have expanded the reasoning of Marval Poultry to situations more like the one the court has before it, the principle does not appear to be widely accepted within the Fourth Circuit.  Rather, it is only applied in a few cases involving section 301 labor disputes.  See W. Virginia-Am. Water Co., 2006 WL 2822262, at *17 ("Although this case, unlike Marval Poultry, involves a request for fees in the context of a refusal to arbitrate, the 'without justification' standard articulated in Marval Poultry appears to be applicable.").  Additionally, while the Southern District of West Virginia recognized Marval Poultry's applicability to motions to compel arbitration, the court concluded that the company did not act without justification.  Id.  In American Benefit Corporation, also cited by defendants, the court granted fees when the defendant refused to submit to arbitration but failed to offer a single authority in support of its arguments and offered only a cursory response to the plaintiff's motion for summary judgment.  Teamsters Local Union No. 505 v. Am. Ben. Corp., 2010 WL 1417808, at *2 (S.D.W. Va. Apr. 2, 2010).  Here, in contrast, Waring provided some colorable arguments in opposition to the motion to compel and cited supporting authority.

10

Other courts in which courts have granted a party's request for attorney's fees incurred to enforce an arbitration agreement have involved arbitration agreements that provided that the prevailing party is entitled to costs and fees incurred to enforce the arbitration agreement.  See, e.g., Robinson v. Taboo Gentlemen's Club, LLC, 2015 WL 3868531, at *11 (N.D.W. Va. June 23, 2015) ("In the event that any party challenges, or is required to initiate proceedings to enforce, the arbitration [agreement], the prevailing party to such challenges/enforcement proceedings shall be entitled to an award of all costs, including reasonable attorney fees, incurring litigating such issues.").  The Agreement between defendants and Waring does not include a comparable provision.  While the court finds that it does have the equitable power to grant defendants' request for attorney's fees, the court notes that the authority under which defendant requests attorney's fees for enforcing arbitration fees is questionable.

Pursuant to its equitable power, the court awards $8,108.50, which represents the fees incurred after the mediation on May 29, 2015.[2]  The Employment Agreement required the parties to first mediate before they arbitrate.  Defs.' Mot. Summ J., Ex. A ("In the event that the parties are unable to reach a mutually agreed upon resolution through mediation, then upon the termination of the mediation process, the parties expressly agree to participate in arbitration proceedings and to be bound by the decision of the arbitrator.").  Waring made three separate requests for mediation—on May 23, 2014, June 13, 2014, and July 23, 2014.  Pl.'s Resp., Ex. A.  On September 23, 2014, the parties agreed to mediate the case on October 22, 2014.  However, once Waring filed the

---

[2] In calculating this figure, the court tabulated all expenses that defendants incurred after the date of May 29, 2015, as recorded in the affidavit of Katherine Dudley Helms that was attached as an exhibit to the defendants' motion for attorneys' fees.

11

instant suit on October 1, 2014, the Network cancelled the scheduled mediation and refused to participate. The parties did not mediate until the court instructed them to do so in accordance with its standing order on mediation. The parties thereafter mediated on May 29, 2015. Since mediation is a prerequisite to arbitration under the Employment Agreement, Waring was not "without justification" in contesting the arbitration agreement until the parties mediated in accordance with the Employment Agreement. Further, as outlined above, defendants cancelled the scheduled mediation in October 2014. Therefore, the court denies defendants' request for fees from October 14, 2014 to May 29, 2015, the period before the parties engaged in mediation.

The arbitrator's decision granted Waring attorneys' fees for the wage payment claim for the period between July 14, 2014 and October 16, 2014 and ordered that the parties bear their respective costs for the remainder of the claims. Accordingly, the court orders that each party bear their own costs for fees relating to the arbitration proceedings.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART and DENIES IN PART** defendants' motion.  It awards defendants only those fees that defendants incurred in compelling arbitration after the May 29, 2015 mediation, in the amount of $8,108.50. In accordance with the arbitration decision, the court grants Waring fees associated with her wage payment claim from July 14, 2014 and October 16, 2014 and orders that the parties bear their own cost for any fees relating to the arbitration proceedings.

**AND IT IS SO ORDERED**.

 

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 31, 2017**
**Charleston, South Carolina**